**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **CANDELARIA PALACIOS, Individually** | § | **Civil Action No.** |
| **and as Representative of the Estate of** | § | **(Jury Trial)** |
| **SAUL VARGAS, Deceased; MARINA LUJAN,** | § | |
| **Individually; JORGE VARGAS, Individually;** | § | |
| **SAUL PALACIOS VARGAS, Individually,** | § | |
| **and RPV, a minor by and through** | § | |
| **Next Friend Candelaria Palacios;** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.**             ` | § | |
| | § | |
| | § | |
| **GALVESTON COUNTY, TEXAS;** | § | |
| **SKYLER RAY CHAPMAN, Individually;** | § | |
| **SERGEANT ANDREW HYDE, Individually;** | § | |
| **OFFICER SMITH, Individually;** | § | |
| **OFFICER THOMPSON, Individually;** | § | |
| **JANE DOE, Individually (VitalCore Nurse);** | § | |
| **and VITALCORE HEALTH STRATEGIES, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Candelaria Palacios, individually and as representative of the Estate of Saul Vargas, deceased; Marina Lujan, individually; Jorge Vargas, individually; Saul Palacios Vargas, Individually, RPV, a minor, by and through next friend Candelaria Palacios; bring this civil rights action under 42 U.S.C. Section 1983 and the Fourteenth Amendment to the United States Constitution for the unlawful killing of Saul Vargas, who died on September 10, 2024, after a Galveston County Jail officer knelt on his neck for nearly two minutes while he was handcuffed and face-down on the floor of his jail cell, while fellow officers, a supervising sergeant, and a contracted medical nurse stood by and watched. The manner of death was ruled Homicide by the

Galveston County Medical Examiner. The officer responsible has been criminally indicted. Plaintiffs seek compensatory and punitive damages for the violations of Saul Vargas's constitutional rights and for their wrongful death and survival claims under Texas law.

## I. PARTIES

1.      Plaintiff Candelaria Palacios is the surviving spouse of Saul Vargas. She brings this action individually, as representative of the Estate of Saul Vargas, deceased, pursuant to Texas Civil Practice and Remedies Code Sections 71.004 and 71.021 and other laws, and as next friend of RPV, a minor. Ms. Palacios is a resident of Galveston County, Texas.

2.      Plaintiff Marina Lujan is the mother of Saul Vargas and brings this action individually as a wrongful death beneficiary pursuant to Texas Civil Practice and Remedies Code Section 71.004 and other laws. Ms. Lujan's address will be provided to the Court and parties upon request.

3.      Plaintiff Jorge Vargas is the father of Saul Vargas and brings this action individually as a wrongful death beneficiary pursuant to Texas Civil Practice and Remedies Code Section 71.004 and other laws. Mr. Vargas's address will be provided to the Court and parties upon request.

4.      Plaintiff Saul Palacios Vargas is the adult son of Saul Vargas and brings this action individually as a wrongful death beneficiary pursuant to Texas Civil Practice and Remedies Code Section 71.004 and other laws. Mr. Vargas's address will be provided to the Court and parties upon request.

5.      Plaintiff RPV, a minor, is a minor child of Saul Vargas and brings this action by and through next friend Candelaria Palacios as a wrongful death beneficiary pursuant to Texas Civil Practice and Remedies Code Section 71.004 and other laws.

6.      The Estate of Saul Vargas brings survival claims pursuant to Texas Civil Practice and Remedies Code Section 71.021, by and through its representative Candelaria Palacios.

7.      Decedent Saul Vargas was a 39-year-old Hispanic male who was confined at the Galveston County Jail at the time of his death on September 10, 2024. He was in the custody of the Galveston County Sheriff's Office on charges of Burglary of a Vehicle and Evading Arrest/Detention with a Vehicle.

8.      Defendant Galveston County, Texas ("the County") is a political subdivision of the State of Texas. The County operates the Galveston County Jail through the Galveston County Sheriff's Office and is responsible for the policies, practices, customs, and training governing the use of force and the provision of medical care to persons in its custody. The County may be served through its County Judge or County Clerk at Galveston County Courthouse, 722 Moody Avenue, Galveston, Texas 77550.

9.      Defendant Skyler Ray Chapman ("Chapman") was at all relevant times a jail officer employed by the Galveston County Sheriff's Office. Chapman acted under color of state law at all times relevant to this action. He is sued in his individual capacity. Chapman has been indicted for Criminally Negligent Homicide in connection with the death of Saul Vargas. Chapman was terminated from the Galveston County Sheriff's Office in January 2025.

10.      Defendant Sergeant Andrew Hyde ("Hyde") was at all relevant times a sergeant employed by the Galveston County Sheriff's Office and was the supervising officer on the scene during the use of force incident that caused the death of Saul Vargas. Hyde acted under color of state law at all times relevant to this action. He is sued in his individual capacity.

11.    Defendant Officer Smith ("Smith") was at all relevant times a jail officer employed by the Galveston County Sheriff's Office who was present in the cell during the use of force incident and who failed to intervene to stop the unconstitutional neck compression applied by Chapman. Smith acted under color of state law at all times relevant to this action. He is sued in his individual capacity. Plaintiff will identify Officer Smith's full legal name upon confirmation through discovery.

12.    Defendant Officer Thompson ("Thompson") was at all relevant times a jail officer employed by the Galveston County Sheriff's Office who was present in the cell during the use of force incident and who failed to intervene to stop the unconstitutional neck compression applied by Chapman. Thompson acted under color of state law at all times relevant to this action. He is sued in his individual capacity. Plaintiff will identify Officer Thompson's full legal name upon confirmation through discovery.

13.    Defendant Jane Doe ("the VitalCore Nurse") was at all relevant times a medical professional employed by or contracted through VitalCore Health Strategies, LLC, deployed at the Galveston County Jail pursuant to Contract B202004. The VitalCore Nurse was summoned to Vargas's cell during the use of force incident and was present during the neck compression applied by Chapman. She acted under color of state law pursuant to *West v. Atkins*, 487 U.S. 42 (1988). She is sued in her individual capacity. Plaintiffs will identify the VitalCore Nurse's full legal name upon receipt of VitalCore's employment and shift records through discovery.

14.    Defendant VitalCore Health Strategies, LLC ("VitalCore") is a private limited liability company headquartered at 719 SW Van Buren Street, Suite 100, Topeka, Kansas 66603, that provided comprehensive inmate healthcare services at the Galveston County Jail pursuant to Contract B202004 with Galveston County. VitalCore has provided healthcare services at the

Galveston County Jail since 2020. VitalCore may be served through its registered agent in the State of Texas. VitalCore acted under color of state law pursuant to West v. Atkins, 487 U.S. 42 (1988), and is liable for the unconstitutional acts and omissions of its medical staff.

## II. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 because Plaintiffs' claims arise under 42 U.S.C. Section 1983 and the Fourteenth Amendment to the United States Constitution.

16. Venue is proper in the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C. Section 1391(b) because all of the events and omissions giving rise to Plaintiffs' claims occurred in Galveston County, Texas, and the Galveston County Jail is located within this District and Division.

## III. STATEMENT OF FACTS

### A. Background: Saul Vargas and His Custody at Galveston County Jail

17. Saul Vargas was booked into the Galveston County Jail on September 2, 2024, at approximately 9:45 p.m. He was held on charges of Burglary of a Vehicle and Evading Arrest/Detention with a Vehicle — nonviolent property offenses. At the time of his death, he had been in custody for eight days.

18. Upon admission, Vargas was placed on a Librium (chlordiazepoxide) protocol, a benzodiazepine medication prescribed for alcohol withdrawal management. Postmortem toxicology confirmed chlordiazepoxide at 160 ng/mL in femoral blood — a therapeutic level well

below any toxic threshold. This active medical protocol established that jail and VitalCore medical staff had actual knowledge of Vargas's serious medical need at the time of his admission and throughout his incarceration.

**B. VitalCore Health Strategies, LLC: The Contracted Medical Provider**

19.     At all times relevant to this action, Galveston County contracted with VitalCore to provide comprehensive inmate healthcare services at the Galveston County Jail pursuant to Contract B202004. VitalCore had provided healthcare services at the jail since 2020 and was operating under the fifth year of the contract, at a proposed annual budget of $7,799,113.27 for the adult facility.

20.     VitalCore's contractual obligations encompassed around-the-clock nursing coverage, including Registered Nurses, Licensed Vocational Nurses, and Certified Medical Assistants on both day and night shifts, along with a Director of Nursing, Medical Director, and mental health staff. VitalCore and its employees were responsible for monitoring and responding to the medical needs of all inmates, including Saul Vargas.

**C. The Use of Force Incident on September 10, 2024**

21.     On September 10, 2024, at approximately 4:57 p.m., jail staff opened the door to Vargas's cell in the male FSP area to deliver a mattress. Vargas pushed past two deputies into the dayroom. Sergeant Hyde, the supervising officer, was alerted to the disturbance and arrived on scene at 16:58:32 according to his body-worn camera footage.

22.     At 16:59:16, Sergeant Hyde deployed his TASER on Vargas. He deployed it a second time at 17:01:33. Officers then carried Vargas back into his cell. By 17:03:20, Vargas was positioned

face down with his upper torso on the bed-bench and his lower torso kneeling on the floor, with three officers on top of him — including Chapman, Smith, and Thompson — attempting to remove TASER prongs and handcuffs.

23.    Officer Chapman was positioned near Vargas's head and neck. At some point during this period, Chapman placed his knee and lower leg directly on Vargas's neck and maintained that position while other officers, Sergeant Hyde, and the VitalCore nurse were present in or near the cell. The cell camera also recorded Chapman pressing Vargas's head to the bed-bench with the palm of his hand for approximately 30 seconds.

24.    Sergeant Hyde continued deploying his TASER on the restrained, prone Vargas at 17:04:53, 17:05:16, and 17:06:31 — three additional TASER deployments while Vargas was already surrounded and pinned. Hyde deployed his TASER on Vargas a total of five times during the incident.

25.    At 17:07, the VitalCore nurse arrived in the cell, summoned to remove TASER barbs from Vargas's back. She entered the cell while Chapman's knee remained on Vargas's neck. She did not object, did not direct Chapman to remove his knee, and did not assess Vargas's airway or condition.

26.    At 17:08:30, Sergeant Hyde verbally asked Vargas whether he understood a warning about further TASER use. Vargas, who had been vocally responsive to commands at earlier points in the incident, was completely silent. This change in responsiveness was directly observable by Hyde and all others present.

27.    Notwithstanding Vargas's unresponsiveness, Sergeant Hyde, all officers, and the VitalCore nurse exited the cell at 17:08:40. As the cell door closed, Vargas was visible in the same prone very uncomfortable position, naked, with one arm bent awkwardly behind his back. He was

unconscious and in need of immediate life-saving medical care. No one remained in the cell, no emergency was called, and no medical assessment was initiated, however. All those present were subjectively aware by eyesight and hearing that Vargas—who had been yelling in pain seconds earlier—suddenly quit moving, became silent, and remained motionless in the very uncomfortable position.

### D. The Twenty-Minute Gap and Discovery of Vargas Unresponsive

28.     According to the Galveston County Sheriff's Department's own Custodial Death Report filed with the Texas Attorney General (CDR No. 24-1442-CJ), staff exited Vargas's cell at approximately 5:08 p.m. and did not return until approximately 5:28 p.m. — a gap of approximately twenty minutes during which Vargas lay unconscious and unmonitored after a violent restraint and tasering event. During this time upon several jailers and medical staff looked in on Vargas through the cell door window and observed him laying like this, unmoving, for the entire time.[1]

29.     When staff returned to the cell at approximately 5:28 p.m., they found Vargas still unmoved and unresponsive. Life safety measures were belatedly initiated. EMS arrived and transported Vargas to the University of Texas Medical Branch hospital in Galveston, where he arrived intubated and was admitted to the ICU. He died at 11:53 p.m. on September 10, 2024 — approximately seven hours after Chapman applied his knee to Vargas's neck.

### E. Autopsy and Cause of Death

---

[1] Video surveillance footage during this crucial period appears potentially altered or tampered with to "blot out" the faces of officers and/or medical staff who peered into the cell.

30.     On September 11, 2024, Chief Medical Examiner Erin A. Barnhart, M.D. performed an autopsy on Vargas (Case No. ME-01-2024-691), attended by representatives of the Galveston County Sheriff's Office, the District Attorney's Office, and the Texas Rangers. Dr. Barnhart found the following: superficial abrasion of the right neck; conjunctival petechial hemorrhage of the left eye, a classic indicator of asphyxia; puncture wounds consistent with TASER barb entrance sites; and severe pulmonary congestion and edema consistent with asphyxiation.

31.     Dr. Barnhart determined the cause of death to be Asphyxia Due to Neck Compression and the manner of death to be Homicide. Her report was signed on November 13, 2024.

### F. The County's Custodial Death Report

32.     On October 9, 2024 — after the autopsy had been completed and investigators from multiple agencies had responded to the scene — the County filed its Custodial Death Report with the Texas Attorney General listing the cause of death as "cardiopulmonary arrest secondary to aspiration" based on the hospital discharge summary, and listing manner of death as "Pending autopsy results." This characterization is directly contradicted by the medical examiner's forensic findings. The CDR recorded "Unknown" in response to virtually every behavioral question about Vargas despite the presence of multiple officers and extensive video documentation.

### G. Criminal Indictment of Chapman

33.     Following a year-long investigation by the Texas Rangers and the Galveston County District Attorney's Office, a grand jury indicted Chapman on August 5, 2025, for Criminally Negligent Homicide in connection with the death of Saul Vargas. The indictment confirmed that Chapman knelt on Vargas's neck, causing his death by asphyxia. As of the filing of this Complaint, the criminal prosecution remains pending.

## IV. CAUSES OF ACTION

### COUNT I: Excessive Force in Violation of the Fourteenth Amendment
### 42 U.S.C. Section 1983 — Against Defendants Chapman

34.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

35.    At the time of the incident, Saul Vargas was a pretrial detainee held at the Galveston County Jail. As a pretrial detainee, his right to be free from excessive force was protected by the Fourteenth Amendment's Due Process Clause. See *Kingsley v. Hendrickson,* 576 U.S. 389 (2015).

36.    Under *Kingsley,* the applicable standard for excessive force claims brought by pretrial detainees is objective: a plaintiff must show only that the force purposely or knowingly used against him was objectively unreasonable. The court considers the relationship between the need for force and the amount of force used, the extent of the plaintiff's injury, the effort to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting.

37.    Defendant Chapman's conduct was objectively unreasonable under any application of the *Kingsley* standard. Vargas was handcuffed, face-down, and surrounded by multiple officers at the time Chapman applied his knee to Vargas's neck. There was no penological justification for neck compression of a prone, restrained detainee. Chapman maintained this position for an extended period — long enough for Vargas to lose consciousness and die. Chapman additionally pressed Vargas's head to the bed-bench with the palm of his hand for approximately 30 seconds. These acts were not a reasonable response to any legitimate security concern and constituted objectively unreasonable, excessive force resulting in death.

38.     As a direct and proximate result of Chapman's unconstitutional use of force, Saul Vargas suffered asphyxia due to neck compression, loss of consciousness, transport to the ICU, and death. Plaintiffs and the Estate of Saul Vargas suffered and continue to suffer damages as described below.

**COUNT II: Failure to Intervene — Excessive Force**
**42 U.S.C. Section 1983 — Against Defendants Hyde, Smith, and Thompson**

39.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

40.     A law enforcement officer who is present at the scene of a constitutional violation, has knowledge that a constitutional violation is being committed, and has a reasonable opportunity to prevent the harm but fails to act is liable under 42 U.S.C. Section 1983. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).

41.     Defendants Hyde, Smith, and Thompson were each present in or near Vargas's cell throughout the period during which Chapman applied his knee and lower leg to Vargas's neck. Each of these defendants personally observed Chapman's conduct and had the opportunity and duty to intervene to stop the unconstitutional neck compression. None did so.

42.     Sergeant Hyde, as the supervising officer on scene, bore a heightened duty to intervene. Hyde was present from the start of the incident, personally deployed his TASER five times on the already-restrained Vargas, and personally observed Chapman's positioning near Vargas's head and neck. At 17:08:30, Hyde directly observed that Vargas had become unresponsive to verbal commands — a clear sign of medical emergency — and still did not intervene, summon medical assistance, or remain in the cell.

43.    The duration of Chapman's neck compression — maintained while multiple officers and a nurse were present in the cell — confirms that each of these defendants had both actual knowledge of the constitutional violation and ample time to intervene. The failure to intervene by Hyde, Smith, and Thompson was a direct and proximate cause of Vargas's death and the damages suffered by Plaintiffs and the Estate.

**COUNT III: Deliberate Indifference to Serious Medical Need**
**42 U.S.C. Section 1983 — Against Defendants Hyde, Smith, Thompson,**
**Jane Doe (VitalCore Nurse), and VitalCore Health Strategies, LLC**

44.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

45.    The Fourteenth Amendment protects pretrial detainees from deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Hare v. City of Corinth,* 74 F.3d 633 (5th Cir. 1996). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.

46.    Saul Vargas had two independently recognized serious medical needs: (a) his active chlordiazepoxide protocol for alcohol withdrawal management, which was prescribed, documented, and actively administered by VitalCore medical staff at the time of the incident; and (b) the acute and obvious medical emergency created by Chapman's neck compression, which rendered Vargas unconscious, unresponsive, and in need of immediate medical intervention by no later than 17:08:30 on September 10, 2024.

47.    Defendant Jane Doe (the VitalCore Nurse) was present in the cell at 17:07 while Chapman's knee was on Vargas's neck. As a licensed medical professional deployed at the jail pursuant to VitalCore's contract, she had actual knowledge of the neck compression and of Vargas's

deteriorating condition. She took no action to stop the compression, assess Vargas's airway, monitor his neurological status, or initiate emergency care. She exited the cell with the officers at 17:08:40 while Vargas lay visibly unconscious. Her failure to act constitutes deliberate indifference to a serious medical need under both the subjective and objective standards. Further, she may have been one of the faces in the video or that that was "blotted out" of the video which peered into the cell as Vargas was dying, a fact which is at least plausible based on the pleadings and video evidence.

48.     Defendant Hyde directly observed at 17:08:30 that Vargas had become unresponsive to verbal commands after extended neck compression and five TASER deployments. Despite this obvious indication of medical emergency, Hyde exited the cell and took no steps to initiate emergency medical care. This constitutes deliberate indifference to a serious medical need. He also may have been one of the peering faces in the video or that was "blotted out."

49.     Defendants Smith and Thompson were each present in the cell and directly observed the prolonged neck compression and Vargas's loss of consciousness. Neither took any action to summon medical care or remain with Vargas after the officers exited. Their inaction constitutes deliberate indifference to a serious medical need. As with the others, they too may have been two peering faces in the video or that were "blotted out."

50.     Defendant VitalCore Health Strategies, LLC is liable for the deliberate indifference of the VitalCore Nurse under *West v. Atkins*, 487 U.S. 42 (1988), as the private medical contractor acting under color of state law pursuant to Contract B202004. VitalCore is additionally liable for maintaining policies, practices, or customs that were the moving force behind the constitutional violations, including the failure to train its medical staff to monitor, assess, and respond to acute medical emergencies arising from use of force incidents involving restrained inmates.

51.     The twenty-minute period from approximately 5:08 p.m. to 5:28 p.m. during which Vargas lay unconscious and unmonitored in his cell — with no wellness check, no medical monitoring, and no emergency response initiated — reflects a systemic failure by all Defendants to respond to a serious and obvious medical emergency. This failure was a direct and proximate cause of Vargas's death.

**COUNT IV: Monell Liability — Unconstitutional Policy, Custom, and Failure to Train**
**42 U.S.C. Section 1983 — Against Defendant Galveston County**

52.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

53.     A municipality is liable under Section 1983 when a constitutional violation results from an official policy, a widespread custom or practice, or a failure to train amounting to deliberate indifference to the rights of persons with whom officers come into contact. *Monell v. Department of Social Services,* 436 U.S. 658 (1978); *City of Canton v. Harris,* 489 U.S. 378 (1989).

54.     Galveston County, acting through the Galveston County Sheriff's Office, maintained one or more of the following unconstitutional policies, customs, or practices that were the moving force behind the violations of Saul Vargas's constitutional rights:

(a) A policy or custom of permitting or failing to prohibit the application of neck compression to prone, restrained detainees, in the absence of any legitimate penological justification;

(b) A policy or custom of failing to intervene when officers observe unconstitutional or dangerous uses of force by fellow officers, including supervisory officers such as Sergeant Hyde

who failed to stop or address Chapman's neck compression despite being on scene throughout the incident;

(c) A policy or custom of failing to provide or summon medical care when detainees display obvious signs of medical distress following use of force incidents, as demonstrated by the twenty-minute gap during which Vargas lay unconscious and unattended;

(d) A failure to train correctional officers on the prohibition of neck compression techniques, on the duty to intervene in unconstitutional uses of force, and on the obligation to summon immediate medical attention when a detainee loses consciousness following a use of force; and

(e) A failure to adequately supervise or discipline officers who engage in excessive force, as evidenced by the fact that Chapman's conduct was observed by multiple supervisory personnel — including Sergeant Hyde and a lieutenant — none of whom intervened or took corrective action during the incident.

50.    The County's post-incident conduct further evidences deliberate indifference to constitutional compliance. The Custodial Death Report filed by the County with the Texas Attorney General on October 9, 2024 — filed after the autopsy had been completed — mischaracterized the cause of death as aspiration, answered "Unknown" to every relevant behavioral and medical question about Vargas, and failed to accurately report the circumstances of his death despite the availability of video evidence and multiple officer witnesses.

56.    These policies, customs, and failures to train were the moving force behind the excessive force applied by Chapman, the failure to intervene by Hyde, Smith, and Thompson, and the failure to provide medical care that caused the death of Saul Vargas.

**COUNT V: Supervisory Liability**
**42 U.S.C. Section 1983 — Against Defendant Hyde**

57.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

58.    A supervisory official may be liable under Section 1983 if: (1) the supervisor failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Goodman v. Harris County,* 571 F.3d 388, 395 (5th Cir. 2009).

59.    Sergeant Hyde was the supervising officer throughout the September 10, 2024, incident. Hyde personally participated in the use of force by deploying his TASER on Vargas five times, including three deployments after Vargas had been carried into his cell and was already surrounded and restrained. Hyde was present throughout Chapman's neck compression and took no action to stop it. Hyde personally observed that Vargas had become unresponsive at 17:08:30 and still took no corrective action, initiated no medical response, and exited the cell.

60.    Hyde's direct participation in and acquiescence to the constitutional violations, combined with his failure as the supervising officer on scene to exercise his authority to stop the unconstitutional neck compression or summon medical care, renders him liable in his supervisory capacity for the resulting constitutional deprivations.

**V. DAMAGES**

61.    As a direct and proximate result of the Defendants' unconstitutional acts and omissions described herein, Plaintiffs and the Estate of Saul Vargas have suffered the following damages:

(a) Wrongful death damages, including loss of companionship, loss of consortium, pecuniary loss, mental anguish suffered by Candelaria Palacios as surviving spouse, pursuant to Texas Civil Practice and Remedies Code Section 71.004;

(b) Survival damages on behalf of the Estate of Saul Vargas, including the conscious pain, suffering, and terror experienced by Vargas from the moment of neck compression through the loss of consciousness and during any period of awareness thereafter, pursuant to Texas Civil Practice and Remedies Code Section 71.021 and 42 U.S.C. Section 1988;

(c) Compensatory damages for the violation of Saul Vargas's constitutional rights, including the deprivation of his life and liberty without due process of law;

(d) Punitive damages against the individual Defendants Chapman, Hyde, Smith, Thompson, and the VitalCore Nurse, whose conduct was callous, reckless, and in conscious disregard of Vargas's constitutional rights;

(e) damages suffered by all Plaintiffs including minor(s), pursuant to 42 U.S.C, 1983 which generally track those allowable under The Texas Wrongful Death Statute, and

(f) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988.

## VI. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Candelaria Palacios, individually and as representative of the Estate of Saul Vargas, Marina Lujan, individually; Jorge Vargas, individually; and RPV, a minor, by and through next friend Candelaria Palacios respectfully requests that this Court:

(a) Enter judgment jointly and severally in favor of Plaintiffs against all Defendants on all counts;

(b) Award compensatory damages in an amount to be determined by the jury;

(c) Award survival damages on behalf of the Estate of Saul Vargas;

(d) Award punitive damages against all individual Defendants and private businesses;

(e) Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988;

(f) Award pre- and postjudgment interest;

(g) Award costs of Court; and

(h) Grant such other and further relief as the Court deems just and proper.

Date: May 11, 2026

Respectfully submitted,

By: */s/Kevin D. Green*_____
Kevin D. Green
*Attorney-in-Charge*
Texas Bar No.: 00792544
S.D. Tex. I.D. No.: 3737219
**LAW OFFICE OF KEVIN D. GREEN**
7960 Mesa Trails Cir
Austin, TX 78731
Telephone: (512) 695-3613

kevin@consumerjusticecenter.com

Thomas J. Lyons, Jr., Esq.
Attorney I.D. No.: 249646
(Admitted pro hoc vice)
**CONSUMER JUSTICE CENTER, P.A.**

367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com


**Hunter Law Corporation, PC Texas Office**
Taylor M. Hunter
Federal I.D. No. 3424673
SBN: 24106123
4131 North Central Expressway Suite 900
Dallas, Texas 75204
Tel: (214) 206-1200
Fax: (214) 206-1220
taylor@thehunterlaw.com

ATTORNEYS FOR PLAINTIFFS Marina Lujan
and Jorge Vargas

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Attorney in Charge
KALLINEN LAW PLLC
U.S. So. Dist. of Texas Bar No. 19417
State Bar of Texas No. 00790995
511 Broadway Street
Houston, Texas 77012
Telephone:      713/320-3785
FAX:             713/893-6737
E-mail:AttorneyKallinen@aol.com

Alexander C. Johnson
KALLINEN LAW PLLC
U.S. So. Dist. of Texas Bar No. 3679181
State Bar of Texas No. 24123583
511 Broadway Street
Houston, Texas 77012
Telephone:      573/340-3316

FAX:        713/893-6737
Email:      alex@acj.legal

ATTORNEYS FOR PLAINTIFFS Candelaria
Palacios, individually and as representative of the
Estate of Saul Vargas, deceased; Saul Palcios
Vargas, Individually; RPV, by and through next
friend Candelaria Palacios

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that the known named defendants in this case are being served in accordance with the Federal Rules of Civil Procedure.

*/s/ Kevin D. Green*